*In re* KIRSCHBAUM'S ESTATE.

1. WILLS—UNDUE INFLUENCE—OPPORTUNITY ALONE INSUFFICIENT TO RAISE ISSUE FOR JURY

Evidence of undue influence exercised by testator's wife against his children by a former marriage, *held,* insufficient to raise an issue of fact; mere opportunity to influence being insufficient.

2. SAME—EVIDENCE—EFFECT OF UNDUE INFLUENCE MAY BE SHOWN BY TESTATOR'S STATEMENTS.

The exercise of undue influence must be established by testimony wholly independent of statements or declarations of the testator, but when undue influence is shown

[1]Wills, 40 Cyc. pp. 1151, 1332; [2]Id., 40 Cyc. p. 1159; 28 R. C. L. 142; 4 R. C. L. Supp. 1801; 5 R. C. L. Supp. 1517.

to have been exercised, its effect may be disclosed by the state of mind of the testator, and such state of mind may be shown by his statements and declarations.

Error to Wayne; Merriam (De Witt H.), J. Submitted January 18, 1928. (Docket No. 66.) Decided April 3, 1928.

Ettie Kirschbaum and others presented for probate the last will of Pizar Kirschbaum, deceased. The will was allowed in the probate court, and Anna Kirschbaum and others appealed to the circuit court. Judgment for proponents *non obstante veredicto*. Contestants bring error. Affirmed.

*Butzel, Levin & Winston* (*A. J. Levin*, of counsel), for appellants.

*Lightner, Oxtoby, Hanley & Crawford*, for appellees.

CLARK, J. The verdict was against the will. Proponents had judgment notwithstanding the verdict, and contestants bring error. The question is undue influence exercised by testator's wife as against his children of a former marriage.

Pizar Kirschbaum, the testator, in 1904, was a tailor in St. Louis. In that year his wife died, leaving five children, the eldest being a daughter, Pearl, about twelve years old. The father placed three of the children in a home for orphans in Cleveland, and, with Pearl and the remaining child, came to Detroit where he opened a tailor shop. Pearl did the work at the home and aided her father in his business. In 1906 the father married Etta Kirschbaum, now his widow. The children were brought from Cleveland. The wife took charge of the home and also worked in the shop. Three children were born of the second marriage. During the period between her father's marriage in 1906 and her marriage in 1910, Pearl was away from

home part of the time. She and her stepmother quarreled from the beginning. Perhaps this is not surprising. She was old enough to remember her own mother and for two years had been in charge of the home. It is evident that she resented the coming of the second Mrs. Kirschbaum. One may sympathize with Pearl and not excuse what she did. She was aggressive. Once when the stepmother used insulting language toward her she struck her and fought with her. The father sided with Pearl on that occasion. On another occasion Pearl, in a rage, overturned a table in the home, and there was such manifest violence that a policeman was called. The father sided with the stepmother at that time.

Pearl did not invite her father to attend her wedding. But he attended in spite of that, and there reconciliation was attempted, but it was not effectual. Pearl's husband testified:

"The only thing he ever told me as to why there had been any recent friction of late was that the fact that they had any friction came from Pearl's mother, being that Pearl was the oldest in the family she remembered her mother more than any of the other children and my wife, Pearl, rather, always claimed that it was through his negligence that her mother died, and, she being the oldest, was the only one that could remember those things and, at times she would throw it up to Mr. Kirschbaum and for that reason he really, from what I understood, that was the reason he cut her off the will rather than the point that was brought out on account of the wedding."

Contestants' case is made up chiefly of testimony to the effect that the stepmother was not kind to the children of the first marriage, especially Pearl, and was partial in the matter of food, clothing, and service to her own children.

The will was made in April, 1922. At that time testator was having a controversy with his son Max, of the first marriage, who had aided him greatly in

the business.    This was later to develop into litiga-
tion.    Testator for a time thought of discriminating
against Max in the will, but finally he decided other-
wise.    At the time of making the will, Pearl, the oldest
child of the first marriage, was about 30 years of
age and had been away from home nearly 12 years.
The youngest child of such marriage was then about
21 years old, while the oldest child of the second
marriage was about 14 years of age.    The will gives
to Mrs. Kirschbaum certain personal effects, to Pearl
$500, and the residue in trust to the following persons
as trustees, Mrs. Kirschbaum, the widow, William
Kirschbaum, son of the first marriage, Fred A. Behr,
testator's attorney, to pay income to Mrs. Kirschbaum
during her life, and with direction that upon the death
of Mrs. Kirschbaum the trust estate be divided among
all surviving children except Pearl, with provision
that the share of any deceased child leaving issue to
go to such issue, and with provision that the division
and distribution of the estate be not before the coming
of full age of the youngest child then surviving, and
with further direction respecting income.    The will
also provides that the son Leo, of the second marriage,
upon his coming of age, should also become a trustee
under the will.    On testator's first visit to his attorney
regarding the will, he was accompanied by his wife.
He had a draft of a will which had been prepared by
other attorneys, and on which draft he had caused to
be made interlineations and erasures.    He discussed
the matter fully with the attorney.    He said he did
not want to leave Pearl anything, that she had not
been a good daughter to him, but finally he concluded
to leave her $500.    The trust for the wife and the
other children was discussed.    A draft of will was
prepared.    Testator took it, kept it about a month,
and returned alone to the attorney, the draft showing
interlineation and change made by testator's book-

keeper.    Another    draft    was    prepared.    Testator kept that about three months, returned alone to his attorney, and executed the will in question.    The trustees were also named executors.    Two of them are proponents.    Pearl and three other children of the first marriage are contestants.

Pizar Kirschbaum was admittedly of sound mind. He was honest and successful in business.    He desired peace and love in his home.    He showed breadth of character in many ways, notably in friendships with persons not of his race.    Except for the claimed unpleasantness with children of the first marriage, Mrs. Kirschbaum was a faithful wife and a good mother.

The theory of contestants' case that Mrs. Kirschbaum's claimed partiality toward her own children and her claimed hostility toward the older children, coupled with her influence over testator, produced the will, is met by the fact that four of the first family and the three of the second are treated alike, and William of the former group is named as executor and a trustee. Pearl alone is not favored, and, if there be infirmity in this will, it must be in this regard.    But testator himself declared the reason for this, as stated, and the record does not support the averment of any other reason.    The wife had opportunity to influence her husband and it may be that she disliked Pearl, but this does not make an issue of fact that the will is not that of the testator.    It is not disputed that, when at the attorney's office with her husband, and discussing a proposed provision for Pearl, Mrs. Kirschbaum said    "* * * well, Pearl is his flesh and blood, and what he wants to do with Pearl is all right." There was no issue of fact for the jury.

With respect to testimony of declarations of testator adduced to show state of mind, we quote from *In re Allen's Estate,* 230 Mich. 584, 591:

"The exercise of undue influence must be established by testimony wholly independent of statements or

declarations of the testator.    When undue influence
is shown to have been exercised, its effect may be dis-
closed by the state of mind of the testator and such
state of mind may be shown by his statements and
declarations."

No question of natural justice is here involved.    *In
re Allen's Estate, supra;* and that case is decisive of
this.    And see *Kneisel* v. *Kneisel*, 143 Mich. 384.

Judgment affirmed.

NORTH, FELLOWS, WIEST, MCDONALD, and SHARPE,
JJ., concurred.

The late Chief Justice FLANNIGAN did not sit.

The late Justice BIRD took no part in this decision.